## JACKSON et al. v. DWIGHT et al.

(Circuit Court of Appeals, Fifth Circuit. November 24, 1896.)

### No. 532.

FACTORS AND BROKERS—ACTION FOR COMMISSIONS—DEFENSES.

Defendants, being wool factors in Texas, had certain wool, belonging to customers, in their possession, which they were not then authorized either to buy or consign to others. Without the previous knowledge or consent of the owners, they took the same as purchasers, at the price which had been fixed by the owners, which was the full market price, and afterwards paid to them the full sum due. Defendants took the wool in this manner in order to consign it to plaintiffs as factors, in Connecticut, plaintiffs having knowledge of the facts, and advising the transaction. The net proceeds of plaintiffs' sales failed to equal the amounts of their advances, commissions, etc., and they sued to recover the difference. As one ground of defense, defendants set up that their own purchase of the wool was illegal, both at common law and under the Texas statute forbidding factors to purchase from their consignors without written authority (Rev. St. 1895, art. 2432), and that plaintiffs were in pari delicto, and could not recover. *Held,* that there was no room for the application of this doctrine, and plaintiffs were entitled to judgment.

In Error to the Circuit Court of the United States for the Western District of Texas.

During the years 1893, 1894, and 1895, the plaintiffs in error, constituting the firm of Jackson, Cramer & March, were wool factors in San Angelo, Tex., and the defendants in error, who were partners under the firm name of Dwight, Skinner & Co., were wool factors in Hartford, Conn. In May, 1893, H. C. Dwight, of the firm of defendants in error, visited San Angelo, Tex., as a representative of his firm, and, while there, had certain negotiations with plaintiffs in error, who acted through J. N. P. Cramer, a member of that firm, regarding a large lot of wools then in the possession of the plaintiffs in error. As a result of this, plaintiffs in error shipped a large lot of wool to defendants in error, and drew against it, and defendants in error handled this wool in the market at Hartford. This transaction resulted in loss, or, more accurately, the proceeds of the wool were not as much as the advances made on it and the cost of carriage, insurance, and handling. The defendants in error contend that the wools were all consigned to them for sale on commission, and that they were entitled to all advances and expenses made on that account, and also to a stipulated commission, and hence that the plaintiffs in error owe them the difference between the proceeds of the wool and these items. The plaintiffs in error contend: First. That a portion only of the wool was consigned, but that a large part thereof was sold by them to defendants in error at a specified price, in San Angelo; that the prices on these wools were unpaid except the amount advanced; and that the balance due them was several thousand dollars. Second. That, if these wools were not purchased by the defendants in error, they guarantied the specified prices therefor, net at San Angelo,

and on this ground owe the plaintiffs in error the same amount as if they had bought the wools. And, third, that, if the transaction between the parties was as contended by the defendants in error, then it was unlawful and void, as a violation by all the parties of the principles and policy of the common law regarding factors and commission merchants, and also of the statutes of the state of Texas on the same subject. November 18, 1895, the defendants in error brought suit in the circuit court for the Western district of Texas, at Austin (the defendants agreeing to that venue), on the 12 drafts drawn by the plaintiffs in error against the defendants in error on account of said shipment of wool, the first dated May 26, 1893, the last July 26, 1893, and the others between these dates, aggregating $45,-409.40, allowing credits for the wool of $44,923.36. The plaintiffs in error answered, setting up the defenses above indicated: (a) Purchase by defendants in error of a portion of the wool; (b) guaranty by defendants in error of prices of said wool; and (c) illegality of the transaction. The case was tried by the court, without a jury, July 10, 1896, and judgment was rendered for the defendants in error for the sum of $2,812.64, the amount found to be due on the account as stated by the defendants in error. The judge, upon request, filed conclusions of fact and of law, finding against the plaintiffs in error, on the issues as to a sale of wools to defendants in error and a guaranty of prices by them; and, after stating at length his findings of fact as to the issue of illegality, held, as a matter of law, that the facts so found were no defense to the suit upon the drafts. To all this the plaintiffs in error excepted, and filed bill of exceptions and assignment of errors. The record is here on writ of error for revision of the judgment.

The judge's findings of fact and conclusions of law were in full as follows:

**Facts.**

(1) I find from the testimony in the case that the defendants executed each of the drafts sued on at the time and for the amount as set out in plaintiffs' petition, and that each of said drafts was presented to and paid by plaintiffs, as alleged in plaintiffs' petition. I further find that the defendants are entitled, as credits against the amounts so paid to them by plaintiffs as the net proceeds of the wools mentioned in plaintiffs' petition, to the several amounts set out in plaintiffs' petition as credits to which the defendants are entitled, and that the amounts remaining unpaid on said drafts, principal and interest, aggregate $2,812.64 at this date.

(2) I find that the testimony does not sustain the defendants' claim that the wools mentioned in Exhibit A to defendants' amended original answer were bought by the plaintiffs from defendants, but that the wools were consigned by the defendants to the plaintiffs, and were sold by the plaintiffs as commission merchants, in due course of business.

(3) I find that the facts do not sustain the defendants' claim that the plaintiffs guarantied to them the price of the wools mentioned in Exhibit A of defendants' said amended original answer.

(4) I find that in the latter part of May, 1893, Mr. H. C. Dwight, a member of the plaintiff firm, was in San Angelo, Tex., at the place of business of the defendant firm, and that, while there, he and Mr. Cramer, of the defendant firm, had negotiations with reference to the wools mentioned in plaintiffs' petition, and which were subsequently shipped to plaintiffs by defendants, and against which the drafts sued on were drawn; that, at the time of these negotiations. defendants were wool factors in San Angelo, Tex., also doing a general mercantile business, and had in their possession, as such factors, the wools mentioned in plaintiffs' petition and defendants' answer; that the larger portion of these wools the defendants were authorized to consign to plaintiffs; that there was a portion of these wools which the defendants were not then authorized to consign, nor to buy from their patrons; that pending the negotiations, and during the inspection of the wools by Messrs. Dwight and Cramer for the purpose of selecting the wools to be shipped, and determining how much should be advanced on each lot, Mr. Cramer advised Col. Dwight that there were certain lots of wools (designating them) which he was not authorized to consign, and which he could not ship without buying them by his (Cramer's) firm, and paying the respective owners of said lots therefor at the prices fixed thereupon by the owners, and that Col. Dwight, with the knowledge of these facts, advised Mr. Cramer to make such

arrangement, and consented to receive said wools upon consignment from the defendants, and to make advances thereon, and that Cramer, for the defendants, agreed to make this arrangement, and ship said wools, and draw against them, and plaintiffs agreed to receive and handle said wools, and to make the advances thereon; that these wools so to be bought by the defendants from their patrons embraced almost all, if not all, of those set out in Exhibit A to the amended original answer of the defendants, and in the tabulated statement in the last count of the defendants' said answer; that, in pursuance of this understanding, these wools were taken by defendants as purchasers thereof, without the then knowledge or consent of the owners thereof, and were shipped to the plaintiffs, and drawn against, and are included in the wools mentioned in plaintiffs' petition, some of the wools so taken being included in each shipment against which the drafts were drawn, excepting the shipment referred to in the draft of date July 26, 1893, for $187.20. I further find that about thirty days after the agreement between plaintiffs and defendants, made through Dwight and Cramer, was reached, the defendants paid the respective owners of said wools the prices fixed by said owners upon said wools, respectively. The same was the full market price thereof. I further find that there was no intention on the part of either Mr. Cramer or Col. Dwight, or any of the plaintiffs or defendants, to defraud or take any advantage of any of the owners of said lots of wool. It is not shown that the defendants had any written authority from the owners of any of said wools to reconsign them or to buy them. It is shown affirmatively that, as to a number of said lots of wool, they had no such authority, either written or verbal.

### Conclusions of Law.

In view of the foregoing findings of fact, judgment is rendered in favor of plaintiffs against the defendants for the sum of two thousand eight hundred and twelve and 64-100 dollars and costs of suit. This, the 11th day of July, 1896, as of the 10th day of July, 1896.

S. R. Fisher and J. C. Townes, for plaintiffs in error.

At common law a factor has no authority to purchase for himself goods consigned to him for sale, or to use such goods in any way for his own benefit. Kaufmann v. Beasley, 54 Tex. 563; McCreary v. Gaines, 55 Tex. 485; Wooters v. Kauffman, 67 Tex. 488, 3 S. W. 465; Wooters v. Kaufman, 73 Tex. 395, 11 S. W. 390. By a statute of Texas, factors are forbidden to purchase articles consigned to them for sale or shipment without written authority from the consignor, and heavy penalties are prescribed for violation of the statute. Rev. St. 1895, art. 2432. The statute is as follows: "No factor or commission merchant to whom any cotton, sugar, produce or merchandise of any kind is consigned, for sale on commission or otherwise, shall purchase the same or reserve any interest whatever therein upon the sale of the same, either directly or indirectly, in his own name or in the name or through the instrumentality of another, for his own benefit or for the benefit of another, or as factor or agent of any other person, without express license from the owner or consignor of such cotton, sugar, produce or other merchandise, or some person authorized by him, given in writing so to do, under a penalty of forfeiture of one-half the value of the cotton, sugar, produce or other merchandise so purchased or sold, to be recovered by the owner of the same by suit before any court of competent jurisdiction in the county where the sale took place, or wherein the offending party resides."

When an act is prohibited by statute, a contract to perform or in furtherance of the prohibited act is illegal and unenforceable. Lawson, Cont. § 279; 1 Pars. Cont. 458; 1 Story, Cont. § 615; Mitchell v. Smith, 2 Am. Dec. 417. The same rule obtains where the contract is in violation of the statute, although not therein expressly declared to be void. See former authorities; also, Fowler v. Scully, 13 Am. Rep. 699; Bowman v. Phillips (Kan. Sup.) 21 Pac. 230. Where a contract originates in a transaction forbidden by statute under penalty, though it is not expressly declared void, no action will lie thereon. Former authorities; also, Seidenbender v. Charles, 8 Am. Dec. 682, and notes; Woods v. Armstrong, 25 Am. Rep. 671; Russell v. De Grand, 15 Mass. 35. When one is privy to the unlawful design of a party to a contract, and aids, advises, and encourages him to enter into such contract in violation of the statute, and himself agrees to do certain things in pursuance of such contract, he is particeps criminis, and cannot re-

cover for services rendered, advances made, or losses incurred in pursuance of such contract, or in forwarding the transaction. Irwin v. Williar, 110 U. S. 510, 4 Sup. Ct. 160; Embrey v. Jemison, 131 U. S. 336, 9 Sup. Ct. 776; Harvey v. Merrill (Mass.) 22 N. E. 49; Kahn v. Walton (Ohio Sup.) 20 N. E. 203; Seeligson v. Lewis, 65 Tex. 217. A contract in violation of law is void, and the courts will neither enforce payment, nor assist one who has paid money thereon to recover it, if both parties are in pari delicto; and, where two parties act together to enable one of them to violate the law in the furtherance of an enterprise in which both are interested, they are in pari delicto, and neither can recover from the other. See former authorities, and also Gray v. Roberts, 12 Am. Dec. 383, and note on page 385. The courts will not assist any one to derive a benefit from a violation of the law, nor render him aid to prevent loss resulting from such a cause. See former authorities, and also Suth. St. Const. §§ 335, 336, and cases cited; 9 Am. & Eng. Enc. Law, 909; Collins v. Blantern, 1 Smith, Lead. Cas. 646, and notes on pages 654–692; Benj. Sales, § 530 et seq.; Read v. Smith, 60 Tex. 379; Seeligson v. Lewis, 65 Tex. 217; Davis v. Sittig, Id. 497; Wegner v. Biering, Id. 506; Shelton v. Marshall, 16 Tex. 344; Aycock v. Braun, 66 Tex. 201, 18 S. W. 500; Rue v. Railway Co., 74 Tex. 474, 8 S. W. 533; Wheeler v. Russell, 17 Mass. 257; Smith v. Arnold, 106 Mass. 269; Prescott v. Battersby, 119 Mass. 285; Swann v. Swann, 21 Fed. 299; 19 Cent. Law J. 303. Where there is one promise based on several considerations, some of which are lawful, and others not, the law will not undertake to separate the good from the bad, but the whole contract is void and unenforceable. Foley v. Speir, 100 N. Y. 552, 558, 3 N. E. 477, and cases cited in appellees' brief and opinion of court; Bank v. King, 44 N. Y. 87; Pars. Cont. 381; Smith, Cont. (5th Ed.) 204; Chit. Cont. 56; Lawson, Cont. §§ 340, 341; Gage v. Fisher (N. D.) 65 N. W. 814; Ohio v. Board of Education, 35 Ohio St. 327; Wisner v. Bardwell, 38 Mich. 278; Raguet v. Roll, 7 Ohio, 76; Filson v. Himes, 47 Am. Dec. 422; Widoe v. Webb, 20 Ohio St. 431; Perkins v. Cummings, 2 Gray, 258; Trist v. Childs, 21 Wall. 441; Burlington, C. R. & N. Ry. Co. v. Northwestern Fuel Co., 31 Fed. 652; Gurlach v. Skinner (Kan. Sup.) 8 Pac. 257; Gage v. Fisher (N. D.) 65 N. W. 809–814; Lawson, Cont. §§ 341–343. If any part of a single consideration for one or more promises is illegal, the whole agreement is void. Lawson, Cont. § 340; Bank v. King, 44 N. Y. 87; Perkins v. Cummings, 2 Gray, 258; Bishop v. Palmer, 146 Mass. 469, 16 N. E. 299; Snyder v. Willey, 33 Mich. 483; Widoe v. Webb, 20 Ohio St. 431; Meguire v. Corwine, 101 U. S. 108–112; McQuade v. Rosecrans, 36 Ohio St. 442; Ricketts v. Harvey (Ind. Sup.) 6 N. E. 325; 3 Am. & Eng. Enc. Law, 887, and notes.

W. W. King and Oscar Bergström, for defendants in error.

The court will bear in mind that the cause of action asserted by the defendants in error requires no aid from the illegal contract between the original consignors and Jackson, Cramer & March. It will be seen by the court's conclusions of fact that the plaintiffs in error shipped the wools to the defendants in error, and, within one month of the date of the shipping, accounted to the consignors for the full price of the wool, as fixed by themselves. Therefore the act of Jackson, Cramer & March in shipping the wools may have been illegal in so far as the consignors were concerned, but the cause of action of the defendants in error requires no aid from the original transaction to establish it. The test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case. The cause of action was upon drafts drawn by the plaintiffs in error upon the defendants in error, and the mere fact that they had drawn said drafts upon wools which they had shipped in violation of Texas statutes is too remote to affect the cause of action. Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526; Gilliam v. Brown, 43 Miss. 641; Simpson v. Bloss, 7 Taunt. 246; Roby v. West, 4 N. H. 290; Beeston v. Beeston, 1 Exch. Div. 13; Owen v. Davis, 1 Bailey. 315. The transaction between Jackson, Cramer & March and Dwight, Skinner & Co. is independent of the transaction between Jackson, Cramer & March and their consignors. In order to sustain the case of the defendants in error, it is not necessary to go into the original transaction. That being the case, plaintiffs in error will not be permitted to set up the illegality of the original contract in order to defeat a re-

covery. Brooks v. Martin, 2 Wall. 70; Planters' Nat. Bank v. Union Bank, 16 Wall. 483; Sharp v. Taylor, 2 Phil. Ch. 801; Faikney v. Reynous, 4 Burrows, 2069; Petrie v. Hannay, 3 Term R. 418; De Leon v. Trevino, 49 Tex. 93; Pfeuffer v. Maltby, 54 Tex. 461.

Before PARDEE and McCORMICK, Circuit Judges, and NEWMAN, District Judge.

PER CURIAM. In the circuit court a jury was waived by stipulation in writing, and thereupon the court made a special finding of facts in the case. The errors assigned are substantially to the effect that the facts as found by the court, under the pleadings in the case, do not warrant the judgment rendered. A careful examination of the pleadings and findings satisfies us that the findings fully support the judgment, and that there is no room, under the facts as found, for the application of the maxim, "In pari delicto melior est conditio defendentis." The judgment of the circuit court is affirmed.